The OKLAHOMA WATER RESOURCES BOARD and Larry Cabelka, Appellants,

v.

The CITY OF LAWTON, Oklahoma, a Municipal Corporation, Appellee.

Nos. 49325, 49346.

Supreme Court of Oklahoma.

May 10, 1977.

As Amended on Denial of Rehearing June 19, 1978.

Larry Derryberry, Atty. Gen., Paul C. Duncan, Asst. Atty. Gen., Oklahoma City, for appellant Oklahoma Water Resources Board.

Nicklas, Parrish, Saenz & Wade by C. E. Wade, Jr., Lawton, Joseph F. Rarick, Norman, for appellant Larry Cabelka.

Russell Bennett, City Atty., Lawton, for appellee.

DAVISON, Justice:

In this case, this Court is asked to review an order of the District Court of Oklahoma County which reversed an order of the Oklahoma Water Resources Board which granted one of the appellants, Mr. Larry Cabelka, a temporary permit to appropriate 400 acre feet of ground water annually for recreation, housing development, and for commercial irrigation use. Appellee, City of Lawton, Oklahoma, a municipal corporation, protested the granting of the permit, stating that the water which Mr. Cabelka sought to appropriate comes to the surface of the earth in the form of a spring and enters a channel known as Jimmie Creek at a rate of approximately one million gallons of water per day, and that the City of Lawton is the owner of Lake Lawtonka, which is the major source of water supply for the City of Lawton, and that the water which Mr. Cabelka wishes to withdraw is within the watershed of Lake Lawtonka and would normally drain into that Lake.

The City argued that if a permit to appropriate the water were granted, the withdrawal of the water would substantially affect the water supply of Lake Lawtonka and be an extreme detriment to the City of Lawton. Other local citizens, not involved in this appeal, also protested the granting of the permit as it would work a hardship on them because it would deprive them of an adequate water supply with which to irrigate and care for their livestock.

After an evidentiary hearing was conducted, the Water Board issued an order granting the temporary permit, which it reaffirmed after a rehearing.

At that time, the City of Lawton filed a petition in the District Court of Oklahoma County, pursuant to 75 O.S.1971 § 318, asking the court to review and set aside the order of the Oklahoma Water Resources Board. After reviewing the record, hearing oral arguments and reviewing briefs, the trial court issued an order setting aside the order issued by the Water Resources Board. Appellants, Larry Cabelka and the Oklahoma Water Resources Board,[1] appeal seeking a review of the trial court's action. The procedure followed by applicant Cabelka, in seeking to appropriate the spring water, was the procedure set forth for the appropriation of ground water, and the permit issued by the Board was for the use of ground water. The application and testimony demonstrated that appellant Cabelka's intention was to encase the spring, thus tapping the source of the spring before it could reach the surface. The source of the spring was undisputedly ground water, and according to undisputed expert testimony, the source of all springs is ground water. Although the ultimate source of the spring water is water from a ground water formation, there exists a question as to whether, when such water comes to the surface in the form of a spring, then forms a definite stream, the water is to be appropriated as ground water, or as stream water.

The trial court held that the Water Resources Board erred in determining that the water could be appropriated as ground water.

The issues presented on review are:

1. Whether water from a ground water formation, when it comes to the surface in a natural spring and forms a definite stream, is to be classified as ground water or as stream water, when an applicant, seeking to use the water, wishes to encase the spring and capture the water before it reaches the surface.

2. What effect, if any, do the provisions of Title 60 O.S.1971 § 60 have upon the classification of such water as either ground water or stream water.

The undisputed evidence demonstrated that the spring in question has been flowing for more than a million years, at the rate of more than a million gallons a day, and that the spring water flows from the spring in a definite stream to Jimmie Creek. Although the findings of fact and conclusions of law prepared by the Board are woefully inadequate and shed little light on the Board's reasoning, we glean from the record as a

1. The Water Resources Board initiated a separate appeal, No. 49,346, but on motion of the Board, to which Mr. Cabelka consented, both appeals were consolidated as one, under the surviving No. 49,325. The Board also adopted the brief filed by appellant, Mr. Cabelka.

whole that the Board most probably determined the water to be ground water because (1) it did not find that the flow of the water from the spring to Jimmie Creek was in a definite stream, or (2) that although the flow from the spring to Jimmie Creek was in a definite stream, the water did not immediately form a definite stream upon reaching the surface, but rather, the water flowed across the ground in a diffused manner for a short distance before forming a definite stream.

Title 82 O.S.1972 Supp. § 105.1(A) provides:

"§ 105.1 Definitions (stream water)

A. 'Definite Stream' means a watercourse in a definite, natural channel, with defined beds and banks, originating from a definite source or sources of supply. The stream may flow intermittently or at irregular intervals if that is characteristic of the sources of supply in the area."

Title 60 O.S.1971 § 60, in restricting the domestic use of stream water, clearly recognizes that springs are sources of streams. That Section provides:

"The owner of the land owns water standing thereon, or flowing over or under its surface but not forming a definite stream. *The use of ground water shall be governed by the Oklahoma Ground Water Law.* Water running in a definite stream, formed by nature over or under the surface, may be used by him for domestic purposes as defined in Section 2(a) of this Act, as long as it remains there, *but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its definite course,* nor pursue nor pollute the same, as such water then becomes public water and is subject to appropriation for the benefit and welfare of the people of the State, as provided by law; Provided however, that nothing contained herein shall prevent the owner of land from damming up or otherwise using the bed of a stream on his land for the collection or storage of waters in an amount not to exceed that which he owns, by virtue of the first sentence of this Section so long as he provides for the continued natural flow of the stream in an amount equal to that which entered his land less the uses allowed in this Act; provided further, that nothing contained herein shall be construed to limit the powers of the Oklahoma Water Resources Board to grant permission to build or alter structures on a stream pursuant to Title 82 to provide for the storage of additional water the use of which the land owner has or acquires by virtue of this Act." [Emphasis added].

Appellants suggest that spring water is not to be considered stream water, although the source of a definite stream, unless upon reaching the surface, it *immediately* forms a definite stream. Appellants reason that if spring water, upon surfacing, runs across the ground in a diffused manner before forming a definite stream, the fact that the water did not immediately form a definite stream precludes the water from becoming stream water. In support of this proposition, appellants suggest that the provisions of Title 60 O.S.1971 § 60, together with the Section's legislative history, verify their analysis. The specific language involved is emphasized in the following quote:

"Water running in a definite stream, formed by nature over or under the surface, may be used by him [landowner] for domestic purposes * * * as long as it remains there, *but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its definite course* . . . ." [Emphasis added].

Appellants trace the emphasized language back to Dakota statutes, from which Oklahoma borrowed the language, then trace the language further back to a proposed New York statute, which was never adopted. Appellants urge us to consider the Ninth Report of the New York Commissioners of the Code (D. V. Field and A. Bradford, the Civil Code of New York— Field Code). Quoting from the Field Code, appellants refer to footnotes to the Code, pointing out that the Code was meant to be a codification of case law, and that the case law codified is set forth in the footnotes. One of the cases footnoted, *Broadbent v. Ramsbotham,* 11 Exch. 602, 25 L.J. [Exch.]

122 (1856) (156 English Reports fully reprinted at 971), holds that a landowner has a right to appropriate surface water which flows over his land in no definite channel, although the water is thereby prevented from reaching a definite channel which it previously supplied.

Citing this case and another case footnoted in the Field Code report, appellants argue that footnotes in the Field Code indicate the intent of the draftsmen of the quoted language to codify the footnoted cases, and we should so interpret said language accordingly. The unstated assumption in appellants' argument is that the Legislature of Oklahoma, when it originally enacted the language in Title 60, was aware of the origin of the language, had traced it back to New York, was aware of the Field Code report, was aware of the cases the Field Code codified, had read the cases, and intended to codify such case law. We do not think such an assumption is justified, and we are not persuaded that a historical origin of the statutory language is, in this case, of any real aid. This being so, we look to the language of the statute itself, and other statutes dealing with the same subject.

■■■ In construing the language, we do not think it was the intent of the Legislature to allow a natural spring, which is the source of a definite stream, to be diverted and put to private, rather than public use, merely because the spring water may, for a short distance before constituting a definite stream, run across the surface in a nondefinite course. We deem the intent of the statute is (1) to make such water stream water and (2) to prevent the diversion of the spring water if it is, *in fact*, a source of a definite stream, regardless of the fact that it may, for some short distance, run across the surface in a nondefinite course. The test is not how immediately spring water forms a definite stream, but rather, whether the spring water forms a definite stream. If it forms a definite stream, it is public water from its inception and may not be diverted for private use unless appropriated as stream water. Being cognizant of the definition of stream water set forth at 82 O.S.1972 Supp. § 105.1, quoted above, we hold that when natural spring water forms a definite stream, the water in the stream and the spring itself, from its inception, is to be classified as stream water and appropriated as such. The Water Board failed to properly classify and appropriate the stream water involved in litigation, and as the trial court pointed out in its order, in so doing, committed reversible error. In so holding, we note that under the provision of 82 O.S.1972 Supp. § 105.1 et seq., the State Water Resources Board must, in evaluating an application to appropriate stream water pursuant to § 105.12 of that Act, make the following determinations:

"After the hearing on the application the Board shall determine from the evidence presented whether:

1. There is unappropriated water available in the amount applied for;

2. The applicant has a present or future need for the water and the use to which applicant intends to put the water is a beneficial use; and

3. *The proposed use does not interfere with domestic or existing appropriative uses.*

4. In the granting of water rights for the transportation of water for use outside the stream system wherein water originates, applicants within such stream system shall have 'a right to all of the water required to adequately supply the beneficial needs of the water users therein. The Board shall review the needs within such area of origin every five (5) years. If so determined, the Board shall approve the application by issuing a permit to appropriate water. The permit shall state the time within which the water shall be applied to beneficial use. In the absence of appeal as provided by this act, the decision of the Board shall be final." [Emphasis added].

■■■ For the above stated reasons, we affirm the trial court's reversal of the Water Resources Board. In so doing, we note that the Board's failure to make *specific* findings of fact and conclusions of law

would alone have been sufficient grounds on which to reverse the Board.

AFFIRMED.

All the Justices concur.