1258

Larry KLINE, et al.,
Protestants-Appellants,

v.

The STATE of Oklahoma, ex rel. the OKLAHOMA WATER RESOURCES BOARD, et al., Applicants-Appellees.

No. 53844.

Supreme Court of Oklahoma.

Dec. 22, 1981.

As Modified on Rehearing
April 26, 1982.

J. Douglas Williams, Woodward, for appellants.

James Foiles, City Atty., Woodward, for appellee, the City of Woodward.

Jan Eric Cartwright, Atty. Gen., Amalikaja Hodgins, Asst. Atty. Gen., and R. Thomas Lay, Oklahoma City, for appellee, Oklahoma Water Resources Bd.

David Hudson, Oklahoma City, for appellee, Canadian Irrigated Lands Co.

HARGRAVE, Justice.

This action is appealed from the District Court of Woodward County, Oklahoma, from a ruling adverse to individual landowner-protestants in an action for review of a decision by the Oklahoma Water Resources Board. That decision by the Board granted temporary permits to withdraw ground water requested in applications 77–638 through 77–646, inclusive. These temporary permits authorize withdrawal of 9,600 acre feet of water annually from the terrace deposits of the North Canadian River. Venue for the District Court action was elected to be Woodward County by virtue of the provisions of 75 O.S.Supp.1977 § 318.

Protestants' petition alleged the hearing before the Water Resources Board established the Applicant intended to sell and was under contract to sell these temporary permits to the City of Woodward for municipal purposes. Further, protestants allege

that a former U. S. Geological Survey engineer testified to the Board that granting a 2-acre foot per year temporary permit for the lands in question would deplete the subject water basin in less than twenty years and dry up or reduce the natural flow of water to protestants' property causing irreparable damage to farm and ranch operations. The petition further alleges the Board members were not furnished with a transcript or summary of the three days' proceedings on the application taken before a hearing officer. Thereafter, an oral summary was made by the officer to the Board. Points emphasized by the petitioners from that summary include a statement that even the engineer for the city of Woodward stated that no more than one acre foot of water should be pumped from applicant's lands. The hearing officer expressed doubt that a two-acre foot authorization would be put to beneficial use because the engineering report stated only one-acre foot would be extracted from the water bearing formation. Further in that summary is the statement that "there is a definite threat that if you allow them to pump at the full two-acre feet per year that they will mine the water out in six years. That's what the calculations are." The summary is concluded with the statement that granting the permit would be contrary to law because at the requested rate the basin would be completely mined in less than twenty years. The petition then states that the Board issued the permits despite the clear and convincing evidence to the contrary and against the recommendations of the hearing officer.

The petition alleges that the construction placed upon 82 O.S.Supp.1979 § 1020.11(B) as requiring issuance of a two-acre foot temporary permit was arbitrary and unreasonable under the facts of this application. The petition states permissive exhaustion of ground water formation in a twenty-year period, as the only statutory limitation on a temporary permit, is arbitrary and unreasonable, deprives landowners of their vested rights under 60 O.S.A.1961 § 60, is contrary

to the first priority given domestic users, and is finally contrary to public policy per se. The petition lastly alleges that the Board's failure to follow 82 O.S.Supp.1979 §§ 1020.17 and 1020.19, requiring spacing and metering when requested by a majority of the landowners in the sub basin was error.

The applicant's answer to this petition states protestants may not raise constitutional issues not raised in the initial proceedings and alleges protestants have no standing to object to these applications because the injury flowing to them is neither immediate nor pecuniary. Applicants allege this review of the Water Resources Board's order constitutes an appeal under the Administrative Procedures Act, 75 O.S. 1971 § 301 et seq. and the scope of review is controlled by 75 O.S.1971 § 322, limiting review to a determination of whether the Board followed its statutory duties found in 82 O.S.Supp.1979 § 1020.7–1020.11. Applicant alleges the statutory requirements have been met.

Protestants reply to the answer states they are an aggrieved party and have standing to appeal the decision rendered, and further that under the Administrative Procedures Act, 75 O.S.1971 § 322(1)(a) specifically allows constitutional issues on appeal.

The order of the District Court finds proper administrative procedures were followed by the Oklahoma Water Resources Board in issuance of the temporary permits to withdraw ground water. The order thus affirms the decision, and states in passing that the permits for two-acre feet withdrawal would be detrimental to the adjoining owners if that rate was withdrawn over a prolonged period.

Appellants contend, first, that the Oklahoma Water Resources Board erred in failing to make findings of fact and conclusions of law as required by 75 O.S.1971 § 312 on the issue of whether or not the requirements of 82 O.S.Supp.1979 § 1020.11(B) were met by the protestants. The issue of

compliance with that statute is immediately relevant to determining the correctness of the Board's decision granting two-acre feet permits to applicant:

B. Temporary permit—A temporary permit is an authorization for the same purposes as a regular permit but granted by the Board prior to completion of the hydrologic survey and the determination of the maximum annual yield of the basin or subbasin. Unless requested by a majority of the owners of the land, the water allocated by a temporary permit shall not be less than two (2) acre feet annually for each acre of land owned or leased by the applicant in the basin or subbasin, ... 82 O.S.Supp.1979 § 1020.-11(B).

The statute authorizes the Board to grant a temporary permit for less than two-acre feet of water annually if a majority of the landowners in the basin or sub-basin so request. Such authority is discretionary, but the Board's discretionary authority to refuse allowance of a temporary permit for less than two-acre feet of water annually may be abused if found arbitrary and unreasonable in light of evidence presented by a majority of the landowners. 75 O.S.1971 § 322. In the cause before the bar protestants made a major effort to come within the ambit of the statutory provisions. There is more than sufficient evidence to allow a conclusion that the protestants comprised a majority of the landowners in the sub-basin relevant to the proceedings. A significant portion of the transcript revolves around the definition of the boundaries of the sub-basin. Protestant-appellants submit that failure to render a decision on the definition of the sub-basin and upon the percentage of protestants overlying it renders it not possible to review the Board's action to determine whether or not it has the support of the law and evidence and hence the District Court erred in sustaining the Board's issuance of the temporary permits. It is proposed that failure to make sufficient findings of fact and law to enable complete review of the order's basis in law

and in fact is in itself reversible error, pointing to 75 O.S.1971 § 312, which provides:

A final order adverse to a party in an individual proceeding shall be in writing or stated in the record. A final order shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the order shall include a ruling upon each proposed finding. Parties shall be notified either personally or by mail of any order. Upon request, a copy of the order shall be delivered or mailed forthwith to each party and to his attorney of record.

The Court spoke to the impact of the above § 312 only two years after its passage in *Okla. Insp. Bur. v. State Bd. for Property & Casualty Rates*, 406 P.2d 453 (Okl.1965). In that cause at the outset the Court noted that a determination of insurance rates and their fairness to insuror and insured was a specialized field, and the statute required the agency, having special expertise in its field, to make findings of fact supporting its conclusions. That requirement was characterized as a substantive issue in the respect that the requirement of factual findings supporting an administrative determination was a necessity for a meaningful review of the order:

The requirement that courts, and commissions acting in a quasi-judicial capacity, shall make findings of fact, is a means provided by Congress for guaranteeing that cases shall be decided according to the evidence and the law, rather than arbitrarily or from extra-legal considerations; and findings of fact serve the additional purpose, where provisions for review are made, of apprising the parties and the reviewing tribunal of the factual basis of the action of the court or commission, so that the parties and the re-

viewing tribunal may determine whether the case has been decided upon the evidence, and the law or, on the contrary, upon arbitrary or extra legal considerations. . . .

*Okla. Insp. Bureau, supra,* at 456, quoting from *Saginaw Broadcasting Co. v. Fed. C. Com'n,* 68 App.D.C. 282, 96 F.2d 554, 559 (U.S.Ct.App.D.C.1938) Cert. Denied as *Gross v. Saginaw Broadcasting,* 305 U.S. 613 [59 S.Ct. 72, 83 L.Ed. 391].

*Okla. Inspection Bureau, supra,* set forth the necessity of the required findings provided by 75 O.S.1971 § 312 early in the history of the Oklahoma Administrative Procedures Act, noting that highly specialized boards should utilize their expertise and memorialize their findings of fact so as to reflect factual findings applied to the correct and applicable legal theories. This enables a reviewing court by reading the order to determine its basis in fact and law.

The requirement of an administrative decision supported by findings of fact and conclusions of law was held to apply to stages of administrative review where that review is specified to be a trial *de novo.* In such instances the reviewing entity may not validly affirm the previous decision without entering findings of fact and conclusions, under the authority of *Allied Investments v. Okla. Securities Commission,* 451 P.2d 952 (Okl.1969). In that action, the sole Court syllabus states that if an agency fails to make such findings its determination will not be sustained.

More recently, this jurisdiction has characterized failure to follow the requirement of the statute, 75 O.S. § 312, as fatal to the validity of an administrative decision and further, that this precept was fundamental. *Brown v. Banking Board,* 512 P.2d 166 (Okl. 1973). Absence of these findings was there held to be fatal to the decision regardless of the existence in the record of evidence to support a proper finding supporting the order. In *Brown, supra,* the quantum of information necessary to a validly supported

order was delineated to be sufficient in content to apprise the parties and this Court of the actual basis of the action taken by the administrative body in order that a determination can be made of the existence of substantial evidence and law supporting the decision.

The protestants presented substantial evidence to the effect that they constituted a majority of the landholders over the basin or sub-basin of the aquifer from which the requested permits were to extract the 9,600 acre feet of water per year. Under 82 O.S.Supp.1979 § 1020.11(B), the landholders may, by request of a majority of this number, restrict withdrawal of water to less than two-acre feet per year per acre of land. A determination of the validity of the Water Resources Board grant of a temporary permit for the larger amount revolves around the definition of the basin *or sub-basin* the water is to be extracted from, as well as a determination of the size of the class of landholders above the structure and the percentage of them objecting to the permit. Without a factual determination and finding on these three (3) items it is not possible to determine whether the Board abused the discretionary authority conferred upon it by 82 O.S.Supp.1979 § 1020.-11(B). In reviewing administrative orders of the Water Resources Board, this Court has stated that failure to make specific findings of fact is a reversible error. *Okla. Water Resources Bd. v. City of Lawton,* 580 P.2d 510 (Okl.1977).

The order actually issued by the Water Resources Board is silent with respect to these considerations last mentioned, and is even ambiguous as to whether the Board found the existence of a basin or a sub-basin to be involved in these applications.

The Board's findings of fact and conclusions of law appear at 592 and 593 of the certified record of the proceedings of the Water Resources Board.[1] Reference to the complete findings and conclusions made in the footnote discloses that the findings and

---

1  **H.** The application and all relevant data was

presented to the Board for consideration at

conclusions are substantially in statutory language without reference to the issues proffered by the protestants or the ultimate facts found to exist to support the order.

The judgment of the District Court must be reversed and the decision of the Water Resources Board granting the temporary permits to extract ground water, Applications 77–638 through 77–646, inclusive, is vacated. This cause is remanded to the Water Resources Board with directions to rehear the applications in accordance with the directions herein contained. A finding that the temporary ground water permits must be vacated under appellants' first proposition of error renders it unnecessary to discuss the balance of the errors alleged in appellants' appeal.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, DOOLIN and OPALA, JJ., concur.

its regular monthly meeting on November 8, 1977, at which time the Board determined that:

1. Subsequent to testing, applications were properly filed in accordance with 82 O.S. Supp.1976, § 1020.7.
2. Applications were properly completed.
3. Proper notice was timely published in an appropriate newspaper and Affidavits were filed by the applicant, indicating all immediately adjacent landowners were notified by certified mail of the applicant's intention to use ground water.
4. The lands owned and dedicated to the applications overlie a fresh ground water basin or subbasin.
5. The applicant is entitled to two (2) acre-feet of ground water per acre of land dedicated to the applications.
6. The use of water was for ultimate sale to the City of Woodward (Woodward Municipal Authority) for municipal and irrigation purposes, and not industrial use, is a beneficial use.
7. There is no indication that waste of the fresh ground water will occur.
8. Temporary permits should be granted in the total amount of 9,600 acre-feet annually. However, because the possibility exists that the ground water basin may be depleted in less than twenty (20) years, and in compliance with 82 O.S.Supp.1976, § 1020.11(B) which requires the Board to assure a minimum twenty (20) year life for each basin or subbasin, the following restrictions were agreed upon by the applicant in regard to the municipal wells:
   a. All municipal wells are to be metered.
   b. Applicant is to provide rain gauges, as specified by the Board, to record total precipitation and estimate natural recharge in the area of the municipal wells.
   c. Applicant is to provide six-inch (6″) observation wells and two-inch (2″) cased wells, as specified by the Board, for monitoring of water levels in the municipal well field.
   d. All municipal wells are to be spaced a minimum of 600 feet from adjacent landowners' property.
9. No restrictions were to be put on the irrigation wells.

CONCLUSIONS OF LAW

A. The applicant has complied with the provisions of 82 O.S.Supp.1976, § 1020.7 in filing applications numbered 77–638 through, and including, 77–646.

B. Proper notice was published and a public hearing was held pursuant to 82 O.S.Supp. 1976, § 1020.8.

C. The application satisfies the four requirements of 82 O.S.Supp.1976, § 1020.9, in that the land dedicated overlies the basin; the applicant owns the ground water beneath the land; irrigation and municipal uses are beneficial; and, there is no evidence that waste will occur.

D. Inasmuch as the hydrologic survey and the determination of the maximum annual yield for the basin, pursuant to 82 O.S.Supp.1976, §§ 1020.4 and 1020.5, have not been made, a temporary permit, under the provisions of 82 O.S.Supp.1976, §§ 1020.10 and 1020.11(B), shall be granted and must be revalidated annually during its term in accordance with 82 O.S.Supp.1976, § 1020.11(B).

E. The proposed use is beneficial as defined in 82 O.S.Supp.1976, § 1020.2 and is non-wasteful in character.