**The PEOPLE of the State of Colorado, Petitioner,**

v.

**John Clair FICHTNER, Respondent.**

**No. 93SC127.**

Supreme Court of Colorado, En Banc.

Feb. 28, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Jonathan Arnold Abbott, Asst. Atty. Gen., Criminal Enforcement Section, Denver, for petitioner.

Edward R. Harris, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to decide whether co-defendants are jointly responsible for restitution for a victim's damaged property and whether the trial court's failure to define "serious bodily injury" in its jury instruction on menacing with a deadly weapon constitutes plain error.

The People petitioned this court to review the decision of the court of appeals in *People v. Fichtner*, No. 91CA0246 (Colo.App. Dec. 17, 1992), holding that (1) a defendant is not jointly liable for restitution when the damage was caused by his co-defendant, and (2) the trial court committed plain error by failing to define "serious bodily injury." The trial court held that the defendant, John Clair Fichtner (Fichtner), was jointly responsible for the damage to a truck tire caused by shots from his co-defendant's shotgun fired during the course of their joint criminal activity. On the second issue, the trial court correctly instructed the jury on the elements of the offense of menacing, but did not specifically define the term "serious bodily injury" in one of the elements.

We reverse the rulings of the court of appeals on both issues and hold that a co-defendant is jointly responsible for restitution when he is also a complicitor in the crime, and that the trial court's omission of the definition of "serious bodily injury" from the jury instructions, although erroneous, did not rise to the level of plain error. Accordingly, we reverse and remand to the court of appeals with directions to reinstate the judgment of conviction, sentence, and order to make restitution imposed by the district court.

I.

In February 1990, Robert Bement (Bement) hired the defendant, John Fichtner (Fichtner), as a contract employee with his house-moving business. Bement arranged for Fichtner to live in a trailer on property on which Bement kept several pieces of equipment he used in his business. Bement did not own the property. The land was owned by Gerald Fisher, who had leased it to George Hatting. Bement was to pay Hatting rent in exchange for his and Fichtner's use of the property. However, Hatting fell behind in his rent payments to Fisher. Ultimately, Hatting left town without telling Fisher that he had permitted Bement and Fichtner to use the property. Eventually, Fisher learned that Fichtner was living on the property, and on April 24, 1990, Fichtner received a notice of eviction. According to Fichtner, Fisher's attorney told him not to remove anything from the property.

On April 26, 1990, Bement, accompanied by his spouse, Harriet Firestone, and her son, Steven Firestone, attempted to remove their property from the premises. While they were doing so, Fichtner, his co-defendant, William Lesney, and another man who was not charged arrived on the scene. Fichtner carried an axe handle; Lesney a shotgun. Fichtner told Bement to leave the premises. Bement refused, fearing that Fichtner would steal his equipment and sell it. Lesney then struck Bement in the face with the butt of the shotgun, causing Bement to fall. As Bement tried to rise, Fichtner hit him several times with the axe handle on the back, neck, and groin.

Harriet Firestone filmed all or most of the episode with a hand-held camcorder. She had been using the camcorder to create a record of the items that she, her spouse, and son were removing from the premises. When the defendants arrived, she continued to film them, including all or part of the beating they inflicted on Bement. The video tape was admitted into evidence.

During the incident, Fichtner threatened Ms. Firestone with the axe handle and ordered her to put her camcorder down. She complied by holding it at her side, and apparently allowed it to continue recording. While Fichtner beat Bement, Lesney pointed his shotgun at Steven Firestone to prevent him from coming to his stepfather's aid. At one point, Lesney shot at him, hitting the dirt in front of Steven Firestone and causing either the pellets from the gun or pebbles on the ground to strike Steven Firestone on the legs.

After the assault, Steven Firestone helped Bement into their truck. Lesney then shot and punctured a tire on the truck. As Bement and his family were driving away, Lesney fired another shot toward the truck, but did not hit it.

Fichtner and Lesney were charged with second-degree assault[1] and felony menacing,[2] and were tried jointly. Their defense was that they were attempting to prevent an unlawful trespass and defend Fichtner's property, which was also on the premises. The court instructed the jury on second-degree assault, on the lesser included offense of third-degree assault, and on menacing with a deadly weapon.[3] The court gave the following instruction on the menacing charge:

The elements of the crime of menacing with a deadly weapon are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. by threat or physical action,

4. knowingly placed or attempted to place another person in fear of imminent serious bodily injury,

5. by use of a deadly weapon.

After considering all the evidence, if you decide the prosecution has proven each of the elements beyond a reasonable doubt, you should find the defendant guilty of menacing with a deadly weapon.

After considering all the evidence, if you decide the prosecution has failed to prove each of the elements beyond a reasonable doubt, you should find the defendant not guilty of menacing with a deadly weapon.

When it instructed on the menacing charge, however, the court did not define the term "serious bodily injury," although it did define the term "bodily injury"[4] as part of the assault instructions.

Fichtner was convicted of third-degree assault against Bement and menacing against Harriet Firestone.[5] The trial court sentenced Fichtner to eight years' incarceration for the menacing and to a concurrent one-year term for third-degree assault, and ordered him to pay restitution in the amount of $2,616.25 for Bement's medical bills and the

1. § 18–3–203(1)(b), 8B C.R.S. (1986).

2. § 18–3–206, 8B C.R.S. (1986).

3. The court also gave instructions on the affirmative defenses of self-defense and defense of property, and on the defense that Fichtner was trying to prevent an unlawful trespass.

4. The relevant instruction included the definition: "'BODILY INJURY' means physical pain, illness, or any impairment of physical or mental condition."

5. Lesney was also convicted of third-degree assault and menacing.

damage to Bement's truck tire. The court of appeals reversed and remanded for a new trial, ruling that the trial court's failure to define "serious bodily injury" amounted to plain error, and that Fichtner was not liable for the $250.00 cost of replacing Bement's truck tire because he did not fire the shot that punctured it.

We granted certiorari to decide whether co-defendants are jointly responsible for restitution for a victim's damaged property and whether the trial court's failure to define the term "serious bodily injury" in a set of otherwise proper jury instructions constitutes plain error.

## II.

We first address whether Fichtner is liable for restitution payments for the damage to Bement's truck tire even though his co-defendant fired the shot that punctured the tire. As part of a criminal sentence, a court must order a defendant to pay restitution to a crime victim. Section 17–2–201(5)(c)(I), 8A C.R.S. (1986), provides:

> As a condition of every parole, the board shall provide that the offender make restitution to the *victim of his conduct* or a member of the victim's immediate family for the actual damages which were sustained.

(Emphasis added.) Section 16–11–102(4), 8A C.R.S. (1986), states in part:

> [T]he amount of restitution shall be fixed by the court at the time of sentencing and shall be endorsed upon the mittimus.

Finally, section 16–11–204.5(1), 8A C.R.S. (1986), provides:

> As a condition of every sentence to probation, the court shall provide that the defendant make restitution to the *victim of his conduct* or to a member of the victim's immediate family for the actual damages which were sustained. Such restitution shall be ordered by the court as a condition of probation.

(Emphasis added.) The court's duty to fix the amount of restitution is not confined to sentences to probation but applies equally to sentences to imprisonment. *People v. Johnson,* 780 P.2d 504 (Colo.1989). However, if a sentence of incarceration is ordered, a court does not also order the defendant to pay restitution during the period of incarceration. Instead, at the time of sentencing, the court sets the amount of restitution for later consideration by the parole board. *See People v. Powell,* 748 P.2d 1355 (Colo.App.1987).

The issue in this case is whether, for restitution purposes under the statute, Bement is a victim of Fichtner's conduct, even though the tire was damaged as a result of the shot from Lesney's gun. The court of appeals applied our decision in *People v. Deadmond,* 683 P.2d 763 (Colo.1984), and concluded that Fichtner was not liable for restitution. The issue in *Deadmond* was whether the Colorado statute, then in effect, authorized restitution to a deceased victim's husband. We found that the statute did not explicitly provide for restitution to anyone other than the victim: "Payment of restitution is authorized only as to the victim of a defendant's conduct, and only for the actual pecuniary damage the victim sustained as the direct result of the defendant's conduct." *Id.* at 774. Relying on *Deadmond,* the court of appeals concluded that the damage to the tire was not the direct result of Fichtner's conduct because there was no evidence that he shot the truck tire. The court of appeals' reliance on *Deadmond* to decide the restitution issue in this case involving two defendants was in error. *Deadmond* only limited the class of those who can receive restitution payments; it did not impose a "proximate cause" test to determine which defendants must pay restitution.

By the plain language of the statute, Bement is a victim of Fichtner's conduct and Fichtner is responsible for restitution. Criminal conduct is a question of culpability rather than direct causation. For example, more than one defendant can be charged with the same crime,[6] and one person can be guilty of an offense committed by another if

---

6. *See, e.g.,* Crim.P. 8(b):

   **Joinder of defendants.** Two or more defendants may be charged in the same indictment, information, or felony complaint if they are alleged to have participated in the same act or series of acts arising from the same criminal episode.

he is a complicitor.[7] *See People v. R.V.,* 635 P.2d 892 (Colo.1981).

Fichtner and Lesney were participants and complicitors in the same criminal acts. Each is responsible for the damage he caused, and also for the damage caused by the other. Fichtner is therefore liable for damage caused by Lesney to the truck tire during the commission of the crime. The trial court's order of restitution was correct.

## III.

We next address whether the trial court's failure to define the term "serious bodily injury" in the jury instruction on menacing amounted to plain error. The trial court correctly instructed the jury on the elements of menacing. The relevant part of the instruction read:

The elements of the crime of menacing with a deadly weapon are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. by threat or physical action,

4. knowingly placed or attempted to place another person in fear of imminent serious bodily injury,

5. by use of a deadly weapon.

The jury should have received another instruction defining "serious bodily injury." Such an instruction typically states: " 'SERIOUS BODILY INJURY' means bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." CJI–Crim. 5:01(23).

Fichtner's attorney did not object to the menacing instruction as it was given. Our review, therefore, is limited to deciding whether the omission of the definition of serious bodily injury rises to the level of plain error. *People v. Cowden,* 735 P.2d 199 (Colo.1987); *Vigil v. People,* 196 Colo. 522, 587 P.2d 1196 (1978). Reversal is only warranted under a plain error standard if the error "casts serious doubt upon the basic fairness of the trial itself." *Wilson v. People,* 743 P.2d 415, 419–20 (Colo.1987). "Only error which is obvious and grave can rise to the status of plain error." *People v. Mills,* 192 Colo. 260, 263, 557 P.2d 1192, 1194 (1976). Based on the totality of the circumstances, if there is overwhelming evidence to support the conviction, we will not reverse it under a plain error standard. *People v. Blair,* 195 Colo. 462, 579 P.2d 1133 (1978). Such a strict standard prevents defendants from "gambling for favorable verdicts and then resorting to appeal on errors that might have easily been corrected by objection at trial." *United States v. Stout,* 667 F.2d 1347 (11th Cir.1982).

Each element of an offense must be proven beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A trial court's failure to instruct a jury on the essential elements of a crime constitutes plain error. *People v. Archuleta,* 180 Colo. 156, 503 P.2d 346 (1972) (reversing conviction when the trial court instructed the jury that the defendant was guilty if he possessed the requisite knowledge *or* intended to commit the crime).

If a trial court were to give an erroneous instruction on an element of the offense, however, it would not rise to the level of plain error if that element was not at issue in the case.[8] *People v. Pearson,* 190 Colo.

7. The jury instruction on complicity, CJI–Crim. 6:04 (1983), states:

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:
1. A crime must have been committed
2. Another person must have committed all or part of the crime
3. The defendant must have had knowledge that the other person intended to commit (all or part of) the crime

4. The defendant did intentionally aid, abet, advise, or encourage the other person in the commission or planning of the crime.
The jury in this case received a complicity instruction substantially identical to CJI–Crim. 6:04.

8. Of course, when a criminal defendant pleads not-guilty, the prosecution must prove every element of the charged offense beyond a reasonable doubt. In this sense, every element of the offense is at issue. However, in the sense employed here, the element of "serious bodily inju-

313, 546 P.2d 1259 (1976). In *Pearson*, the defendant was convicted of first-degree murder. He appealed, claiming that the jury was not properly instructed on the term "premeditation." We agreed that the instruction was erroneous, but ruled that it did not amount to reversible error.

> [T]here is no error in this case because whether there was premeditation or not was never an issue. From the record of this case, and particularly from the defense closing argument, the only theory of defense was that the prosecution had not presented sufficient evidence to prove that *the defendant* committed this murder.

*Id.* at 318, 546 P.2d at 1246; *see also People v. Quintana*, 701 P.2d 1264 (Colo.App.1985) (holding that the trial court's improper instruction to the jury on the culpable mental states of "knowingly" and "intentionally" was not plain error where the defendant's mental state was not an issue at trial and where the evidence of guilt was overwhelming); *People v. Romero*, 689 P.2d 692 (Colo.App.1984) (finding no plain error when the trial court incorrectly advised the jury on "knowingly" because the defendant's mental state was not at issue and the defense focused solely on identification of the defendant and the credibility of prosecution's witnesses), *cert. denied* (Oct. 22, 1984); *People v. Cardenas*, 42 Colo. App. 61, 592 P.2d 1348 (1979) (holding, in a child abuse prosecution, that, where the jury was not instructed on the definitions of the statutory terms "may endanger the child's life or health" and "without justifiable excuse," there was no plain error because the defendant did not claim that his actions were justifiable as disciplinary measures and because of the overwhelming evidence of defendant's guilt. Contrast with *People v. Hoehl*, 193 Colo. 557, 568 P.2d 484 (1977), in which the jury received the same erroneous instructions as in *Cardenas*, but, because the lower appellate standard of harmless error applied, defendant's conviction was reversed.), *cert. denied* (Apr. 16, 1979).

The trial court's failure to instruct the jury on the definition of "serious bodily injury" does not rise to the level of plain error because the issue of the degree of bodily injury that Harriet Firestone feared from Fichtner and the axe handle was not contested at trial. Fichtner's defense throughout the case was that he was attempting to prevent Bement and Bement's family from unlawfully trespassing on the property and that he was defending his own property from being taken. A thorough review of the record confirms that these were the only issues of the case. At no time—whether during voir dire of the potential jurors, opening statements, or closing statements—did the defense claim that, if Fichtner did threaten Harriet Firestone, he did not create a fear of serious bodily injury. In fact, almost none of Fichtner's defense specifically addressed any of the elements of the menacing count. His mental state and intent when he threatened Harriet Firestone, for example, were never brought up. Because the question of whether Fichtner placed Harriet Firestone in fear of imminent serious bodily injury was not at issue in the case, the trial court's omission of the definition of "serious bodily injury" in the jury instructions does not constitute plain error.

Based on the totality of the circumstances, including the defenses employed by the defendant, if there is overwhelming evidence to support the conviction, we will not reverse it under a plain error standard. *People v. Blair*, 195 Colo. 462, 579 P.2d 1133 (1978). The record contains overwhelming evidence to support Fichtner's conviction for menacing. This is not a case of the word of the defendant against the word of the victims. Several eye witnesses observed the crimes and testified at trial. Most importantly, however, Harriet Firestone videotaped all or most of the assault of her husband and Fichtner and Lesney's threats toward her and her son. The videotape was entered into evidence at trial and was viewed by the jury.

Harriet Firestone's testimony clearly indicates that she was placed in fear of imminent serious bodily injury by Fichtner. She testified that he confronted her at least twice with the axe handle, demanding that she put down her camcorder. She reported that,

ry" was not at issue because the prosecution's

proof of this element was unrebutted.

partly due to the difference in their sizes,[9] she was very afraid. She testified that she had "no doubt but what he would have come after me with the axe handle, had I not dropped the camera."[10] Harriet Firestone also testified that during the episode her son said to her, "Mom, he's got a gun, get out of here. He shot at us, he'll kill us." Bement testified that, at the time of the assault, he believed that Fichtner and Lesney would have killed him if his wife and stepson had not been present.

We conclude that there is overwhelming evidence in the record to support Fichtner's conviction for menacing with a deadly weapon. Based on the record in this case, including the defendant's theory of defense, there is no reasonable possibility that the incomplete jury instruction so contributed to the defendant's conviction that it constitutes plain error and requires reversal.

### IV.

We hold that the trial court correctly ordered Fichtner to pay restitution for the truck tire that his co-defendant Lesney shot and punctured. A co-defendant is jointly liable for restitution for damage to a victim's property when the damage was inflicted during the criminal episode for which both are charged. We further hold it was not plain error for the trial court to omit the definition of "serious bodily injury" in an otherwise correct jury instruction on menacing with a deadly weapon, when there was overwhelming evidence in the record to support the defendant's guilt and when neither the substance of the instruction nor the definition of one of its terms was at issue in the case.

We reverse the judgment of the court of appeals on both issues. Accordingly, we reverse and remand to the court of appeals with directions to reinstate the judgment of conviction, sentence, and order of restitution imposed by the trial court.

---

9. According to the record, Fichtner is approximately 6'2" tall and weighs 210 pounds, and Harriet Firestone is approximately 5'6" tall and weighs 125 pounds.

10. Her testimony indicated that she did not drop the camcorder, but instead held it at her side.